**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                              CRIMINAL ACTION NO. 2:09-cr-00222-20

ROCCO J. BOYD,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Rocco J. Boyd's Motion for Reinstatement of Bond [Docket 789].

Defendant appeared before Magistrate Judge Tonianne J. Bongiovanni of the District of New Jersey on October 6 and 8, 2009, for a detention hearing.  Magistrate Judge Bongiovanni ordered that Defendant be released on a $150,000 unsecured bond pending trial. The Government subsequently filed a motion with this Court seeking review of the order releasing Defendant on bond in accordance with 18 U.S.C. § 3145(a).  The Court referred the motion to Magistrate Judge Mary E. Stanley for disposition pursuant to 28 U.S.C. § 636(b)(1).  Magistrate Judge Stanley held a detention hearing on October 21, 2009, at the conclusion of which she ordered that Defendant be detained pending trial.  Defendant now brings this appeal seeking a de novo review of Magistrate Stanley's detention order on the grounds that the Government has not demonstrated by clear and convincing evidence that Defendant's release would pose a danger to any person or the community.

## I. STANDARD OF REVIEW

The Bail Reform Act provides that a defendant shall be detained only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required or the safety of any other person and the community.  18 U.S.C. § 3142(e). When a party seeks review of a magistrate judge's order releasing or detaining a defendant, the Court must conduct a de novo review of the record and of the proceedings before the magistrate judge, *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985), but it need not hold a second detention hearing, *cf. United States v. Toler*, 684 F. Supp. 436, 437 (S.D. W. Va. 1988) (Haden, C.J.).  The Court's decision is guided by the factors set forth in 18 U.S.C. § 3142(g).  These factors are (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).  In order to obtain a detention order, the Government must demonstrate either (1) by clear and convincing evidence that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (citing 18 U.S.C. § 3142(f)(2)); or (2) by a preponderance of the evidence that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).[*]

---

[*] Under some circumstances, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community.  *See*

(continued...)

## II.  DISCUSSION

The Government contends that there are no conditions or combination of conditions other than detention that would reasonably assure the safety of any other person and the community. There have been no representations that there is a risk of Defendant's nonappearance.  Accordingly, the Government's burden is to demonstrate by clear and convincing evidence that Defendant's release poses a risk to the safety of others and the community.  The Court reviews the Government's evidence and arguments in light of the factors set forth in 18 U.S.C. § 3142(g).

### A.    Nature and Circumstances of the Offense Charged

Defendant is named in three counts of a forty-four-count Indictment lodged against various members and associates of the Pagan's Motorcycle Club (PMC).  Count Twelve charges Defendant with interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. §§ 1952(a)(1). Count Fifteen charges him with obstruction of justice in violation of 18 U.S.C. § 1512(a)(2)(C). Count Sixteen charges him with assault with a dangerous weapon in aid of a racketeering activity in violation of 18 U.S.C. § 1959(a)(3).   Defendant faces maximum terms of imprisonment of five years on Count Twelve, thirty years on Count Fifteen, and twenty years on Count Sixteen.

Count Twelve charges Defendant with transporting of the proceeds of an illegal gambling operation from New Jersey to West Virginia.  This charge does not involve violence or the threat of violence against anyone.

Counts Fifteen and Sixteen are of greater relevance to the issue at hand.  These charges arise from an incident that allegedly occurred on January 10, 2009.  According to the Government, a PMC

---

[*](...continued)
18 U.S.C. § 3142(e).  This presumption does not apply to Defendant in this case.

member suspected of being a police officer or informant traveled from West Virginia to New Jersey for a PMC event.  The alleged victim was led into a hotel room where he was interrogated and subsequently beaten by several PMC members.  It is alleged that Defendant participating in the beating, striking the victim at least twice in the head.

The charged conduct, if true, demonstrates that Defendant has the capacity and willingness to use violence against persons suspected of cooperating with government authorities.  This is particularly concerning because the identities of persons who have cooperated with the government during the investigation of this case, or who may become witnesses against defendants, are likely to become known to the defendants as this case progresses.  Thus, the nature and circumstances of the offenses charged indicate that Defendant poses a risk to others and the community—specifically, any persons who have cooperated or will cooperate with the authorities in connection with this case.

B.      *Weight of the Evidence*

The Government has proffered substantial evidence linking Defendant to the offenses charged in the Indictment.  *Cf. United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) (holding that the government may proceed by way of proffer at detention hearings); *United States v. Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999) (same).  With regard to the incident charged in Counts Fifteen and Sixteen, the Government has presented the evidence of a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) special agent who interviewed the alleged victim.  At the hearing held before Magistrate Judge Stanley on October 21, 2009, the agent relayed the alleged victim's account of the incident, which matches the conduct charged in Counts Fifteen and Sixteen of the Indictment.  According to the special agent, the alleged victim picked Defendant's picture out of a lineup that included over a hundred photographs of PMC members.

4

Defendant attacks the credibility of the alleged victim, arguing that he did not go to the hospital after the alleged beating and that he has substance abuse problems.  The hearsay evidence of the alleged victim is not the only evidence proffered by the Government, however.  The Government has proffered additional evidence that the beating took place and that Defendant was present in the hotel room at the time.  Through the ATF special agent, the Government presented hearsay evidence of a second cooperating witness who was present for a conversation between Floyd Moore, the national vice president of the PMC, and Elmer Moore, president of a West Virginia PMC chapter, the morning after the alleged beating.  According to the Government's proffer, Elmer explained to Floyd that the alleged victim had been beaten because he had been acting nervously, which had led to the suspicion that he was a police officer or informant.  The Government also has proffered a stipulation of facts signed by co-defendant James Claypool in connection with a plea agreement.  Claypool's stipulation corroborates the alleged victim's account of the incident.  According to Claypool, the alleged victim was beaten by the PMC members in the hotel room to discourage him from cooperating with law enforcement officers.  The stipulation lists Elmer Moore and Defendant as being among the PMC members in the room.

> C.   *History and Characteristics of Defendant*

Defendant argues that aspects of his history and characteristics establish that he does not pose a danger to others.  To his credit, Defendant appears to enjoy a stable and supportive family.  Numerous letters of support from members of the community also speak to his good character.  This show of family and community support stands in sharp contrast, however, to Defendant's long history of serious criminal activity.  Defendant has convictions for sexual assault, obstruction of justice, and identity theft.  He has other arrests for assault, drug possession, weapons possession,

robbery, and attempting to cause bodily injury.  Defendant's criminal history extends back thirty years and includes, most recently, an arrest for attempting to cause bodily injury and a conviction for "unlawful activity" in 2005.  In addition to the charged conduct, the Government has proffered evidence that a witness observed Defendant selling cocaine on at least two instances within the past year.  Defendant also tested positive for marijuana and cocaine on the day of his arrest on the present charges.

       D.     *Nature and Seriousness of Danger to Others*

The offense conduct charged in Counts Fifteen and Sixteen of the Indictment involves the use of violence against a person believed to be cooperating with government authorities.  As Magistrate Stanley observed at Defendant's October 21 detention hearing:

> The intimidation or the attempt to intimidate a witness is the most devastating attack on the criminal justice system that there is because our system does not work if victims are not willing to come forward and testify about criminal conduct. And if the defendant is on home detention, electronic monitoring, or any of the other conditions of bond proposed by the defense, the court has absolutely no assurance that he is not contacting witnesses or attempting to intimidate them.

(Docket 789-3 at 18 – 19.)  The unsealing of the Indictment in this case potentially exposes a number of persons within the PMC as government informants.  Furthermore, the class of persons who may be targeted for their real or perceived cooperation with the government grows with each plea agreement that is filed with the Court.  The Government's evidence demonstrates that Defendant poses a significant danger to these individuals.

*III.  CONCLUSION*

After reviewing de novo the detention order pursuant to 18 U.S.C. § 3145(b), and for the reasons discussed above, the Court **FINDS** by clear and convincing evidence that no condition or combination of conditions could protect the safety of other persons and the community.

6

Accordingly, the Court **AFFIRMS** Magistrate Judge Stanley's Detention Order and **ORDERS** that

Defendant remain in the custody of the United States Marshal pending trial.

      **IT IS SO ORDERED**.

      The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel,

the United States Attorney, the United States Probation Office, and the United States Marshal.

             ENTER:      January 14, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE